**Federal Defenders**
OF NEW YORK, INC.

Southern District
81 Main Street, Suite 300
White Plains, NY 10601-4150
Tel: (914) 428-7124  Fax: (914) 948-5109

Barry D. Leiwant
*Interim Executive Director
and Attorney-in-Chief*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

December 27, 2023

**BY ECF & E-MAIL**

The Honorable Nelson S. Román
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

        Re: *United States v. Matthew Mills*, 23-cr-232 (NSR)

Dear Honorable Judge Román:

    I respectfully submit this letter in support of a sentence of 10-years imprisonment with supervision to follow for Mr. Mills's sentencing scheduled before this Court on January 10, 2022, at 9:45 a.m.

**I.**     **History and Characteristics of Mr. Mills**

    Mr. Mills is the younger of two sons born to Terry and Kimberly Mills. His father was in the Air Force and Mr. Mills was born on the U.S. Air Force base in Washington State on May 17, 1993. Forensic-Psychiatric Evaluation of Matthew Mills by Alexander Sasha Bardey, M.D., dated November 1, 2022 ("Bardey Report"), attached hereto as Exhibit A, at 2. He was born with a birth defect called Craniosynostosis, which required surgery shortly after his birth. *Id.*; *see* Letter from Terry Mills, attached hereto as Exhibit B. Based on testing when he was three years old, his delays were prevalent enough that he qualified intervention services and was issued an Individualized Education Program ("IEP"). Exhibit A at 7-8. Although he met developmental milestones, he had a learning disability, speech and language delays, and did not speak until the age of three and a half. *Id.* at 2, 7, 12.

    When he was one year old, the family moved to Wisconsin where Mr. Mills lived until he was 6 years old when his father left the Air Force. The family relocated to Oscala, Florida after his father got a job there. Mr. Mills resided in Florida throughout his childhood until he was 20

years old. Although he stayed in Florida, his family moved approximately ten times during his childhood, and never spent more than four years in the same home. *Id.* at 3. Not all of the moves required him to switch schools, but the frequent moves disrupted his education and took him away from neighborhood friends, which exacerbated his difficulties in maintaining friendships. *Id.*

When he was 6 years old, he underwent a cognitive assessment by a school psychologist. *Id.* at 8. His IQ was measured at 69, in the 2nd percentile in the Extremely Low range. *Id.* He continued to have IEPs throughout school, but even with them, he struggled immensely. *Id.* at 12. When Mr. Mills started second grade, he was placed in special education classes and started speech therapy. *Id.* at 2. His family also has a history of mental illness. Bardey at 2. Both his mother, with whom he was very close, and his older brother Jack were diagnosed with bipolar disorder. *Id.*

Although he does not recall being bullied in school, he was teased as a kid, which he now believes was because of his social peculiarities due to his yet diagnosed Asperger's Syndrome. Both his father and brother recall significant instances of bullying. Exhibit B; Letter from Zachary Mills, attached hereto as Exhibit C. His brother recalls an incident where Mr. Mills believed he was finally being invited to hang out with other kids only to be assaulted by those same kids. Exhibit C. His condition affected his ability to interact with his peers because it impinged his ability to read social cues and engage with others. Letter from René Holland, attached hereto as Exhibit D.

Mr. Mills recalls having one or two friends at a time, but they would pick on him. Exhibit A at 3. They would often get upset with him and he could not understand why. He now believes it was because he had difficulty understanding their feelings. *Id.* He also acted several years younger than his actual age. *Id.* at 12. Although he liked people, he never really had close friends. *Id.* It was difficult for him to maintain friendships because it was difficult for him to understand other's feelings. *Id.* Over time, he gravitated toward younger children because he felt more comfortable with them because they were more developmentally in line with him. *Id.* at 13.

Although he did not have any abuse in his home, he was exposed to sex at an early age. When he was only 8 years old, Mr. Mills had his first sexual appearance. *Id.* at 4. An 11-year-old male neighbor performed fellatio on him during a sleepover. *Id.* Mr. Mills did not really understand what was going on but recalls that he did not like it. He did not disclose the abuse at

the time, and it was not until several year later that he revealed what occurred. In the immediate short term, it effected his ability to trust other people and it caused him to isolate. He did not express an interest in his sexuality until puberty around the age of 13 when he began looking at pornography. *Id.*

He had to repeat the fifth grade twice because he could not pass the placement test due to difficulties with reading comprehension and math. *Id.* at 3. He continued to struggle in school until the 10th grade when he had to leave school following an incident with another student. *Id.* at 4. Around that time, Mr. Mills had discovered sexting and thought that sending a naked photo of himself his friend whom he was attracted to would be a good way to show the friend he was interested. *Id.* Although he had not yet been diagnosed at the time, Mr. Mills's Asperger's Syndrome made it difficult for him to appreciate how this gesture may be received and he was surprised by his friend's reaction and the consequences he faced. *Id.* Mr. Mills was home schooled by his mother following this incident and eventually stopped his education before completing high school.

He participated in psychotherapy at the age of 17 for about two years following this incident while living in Florida. This occurred shortly after he was diagnosed with Asperger's Syndrome. Following that diagnosis, he continued to see a psychologist for counseling. *Id.* at 3. He found counseling beneficial as he was finally able to speak to someone who understood the challenges he had been going through and he could finally express himself. *Id.* Mr. Mills first questioned his sexuality when he was in high school. *Id.* at 4. He came out as gay when he was 18 years old. His mother was very supportive; however, his father was quiet and later said he was worried he would be bullied.

When he was 18 years old, his father got a job in Colorado and his parents moved, leaving him behind. *Id.* at 13. Mr. Mills lived with his brother for several months and then lived on his own for about a year. He moved to Colorado in 2013 when he was 20 years old to join his parents. *Id.* at 3-4, 13. Shortly before the move, his mother was diagnosed with stage 4 cancer in her bones and lungs. *Id.* at 4. This was devastating for the family as she was "the heart of the family." Pre-Sentence Report ("PSR") ¶ 53. She had also been supportive and a fierce advocate for Mr. Mills to ensure he got the services he needed.

When he first moved to Colorado, he did not have a lot going on in his life. He would socialize with people from work, but his social life was limited. Exhibit A at 4. He cared for his

mother while her health was declining and did not have much time for dating. *Id.* Eventually, he started using dating applications, such as Grinder, and began meeting up with men to engage in sexual activity. *Id.* He met his fiancé William Tuller when they were both age 21 years old in 2014. They met through a dating application but did not officially get together until after his mother's passing in 2015. *Id.* at 2, 4, 11. He was only 22 years old when he lost his mother, who was only 45 years old when she passed.

After he met Will, he continued to use dating applications to meet up for sexual encounters with men, but no serious relationships resulted. *Id.* at 4. He and Will had an open relationship with the understanding that each could engage in sexual encounters outside of the relationship. *Id.* Mr. Mills also found that he was looking at pornography more often. *Id.* at 5. He started joining social media groups, especially through Facebook, with others who had similar interests. *Id.* He describes these groups as "gay groups" tailored to particular fetishes. *Id.* He had an interest in "daddy/son" fantasies. *Id.* He became more interested in younger men of legal age through this dynamic because of their increased interest in sex. *Id.* He also found these dynamic rewarding because, in a sense, he felt he was helping these younger gay men explore their sexual interests, something he felt he was never taught to do. *Id.* In exploring these groups, he became involved in more niche groups interested in pornography and online chat groups. It was through these groups that he was first introduced to child pornography. As he continued to explore meeting men online and various online groups, he found that men his age were less interested in him, and he was receiving interest from men who were slightly younger. *Id.*

## II.     Prior Offense Conduct in Coloardo

On August 19, 2019, Facebook reported to National Center for Missing and Exploited Children ("NCMEC") that it believed a user received an image of child pornography and provided the phone number and IP address connected to the Facebook account. On July 12, 2019, a subpoena was served on Comcast regarding the IP address associated with the account. It was registered to Mr. Mills's fiancé at an address in Denver, Colorado. Federal agents went to that location on August 22, 2019. Mr. Mills was present and provided consent to search his electronic devices and to assume his online identities.

After reviewing the content on Mr. Mills's devices, agents learned that Mr. Mills had sexual intercourse with an underage teenage boy and took photographs of the encounter. When Mr. Mills was interviewed by law enforcement, he was cooperative. At the time of this conduct,

he was 26 years old and was chatting with someone he believed to have been 18 or 19 years old. *Id.* The two arranged to meet up in person and engaged in sexual intercourse on two occasions. When they first met and were engaged in sex acts, Mr. Mills learned this individual was underage. *Id.* Mr. Mills was arrested on December 12, 2019.

Following his arrest on state charges in Colorado, he pleaded guilty to one count of Sexual Exploitation of a Child – Video/20+ Items, a violation of Colorado Revised Statutes 18-6-403(3)(b.5), (5) on April 13, 2020. He was sentenced to eight years of probation on July 10, 2020 and first registered as a sex offender on July 16, 2020.

### III. Nature and Circumstances of the Offense

Two weeks after he was required to register as a sex offender for his Colorado case, Mr. Mills became involved in the instant offense. On August 3, 2020, the parent of the victim reported the activity between the victim and Mr. Mills to the FBI. On August 10, 2020, the FBI met with the victim. According to the complaint, the victim reported that he met Mr. Mills through the video game Fortnite when Mr. Mills sent the victim a friend request. After receiving the request, the victim left the game he was playing and went to the game Mr. Mills was playing. Mr. Mills told the victim that he was 17 or 18 years old. According to the victim, after playing Fortnite for two days, Mr. Mills asked the victim for his cell phone number, and they began to communicate via text message. Eventually, they exchanged naked photographs and videos. The victim's parents provided consent for the FBI to search the phone. A review of the phone showed numerous incoming and outgoing texts between Mr. Mills and the victim with the majority of these texts occurring between 11:43 p.m. on July 30, 2020, and 12:50 a.m. on August 1, 2020.

According to Mr. Mills, he met the victim through the website Omegle, which is a chat site where users are randomly paired with other users in one-on-one chat sessions. *Id.* at 6. Mr. Mills was paired with the victim and did not know his age when they first spoke. *Id.* at 6-7. After meeting in a chat room, they exchanged phone numbers and began texting one another. *Id.* at 7. Once they began to text one another, Mr. Mills learned the victim's age was 11. *Id.* This appears to be consistent with the content of the text messages contained within the complaint. *See* Complt. ¶ 7b.

### IV. A 10-Year Sentence Would be Sufficient, But Not Greater Than Necessary

The overriding sentencing principle, set forth in 18 U.S.C. § 3553(a), is to "impose a sentence that is sufficient, but not greater than necessary" to comply with the purposes of

sentencing, which are retribution, deterrence, public protection, and rehabilitation. Imposing a sentence of time served with a longer period of supervision would be sufficient as it would reflect the serious nature of the offense, promotes respect for the law, and provides a just punishment for the offense.

### A. Mr. Mills's Autism Spectrum Disorder

Dr. Bardey agreed with prior diagnoses of Mr. Mills having autism spectrum disorder ("ASD")[1], with accompanying intellectual impairment. Bardey Report at 13. It is difficult to understand Mr. Mills's behavior without understanding this condition. Individuals with ASD and Asperger's Syndrome specifically often have deficits in interacting in social situations and understanding the nuances of others' behavior. *Id.* at 6. They often have difficulty understanding the feelings of other people or another person's motivations. *Id.* They often demonstrate rigid behavior patterns and narrow, intense interests. *Id.* Those with ASD are often drawn to younger people because they are easier to interact with than adults. *Id.* at 15. Those with ASD often lack empathy and impulse control and fail to recognize the implications of their behavior. *Id.*

Mr. Mills has demonstrated many of these characteristics throughout his life. *Id.* at 6. As Dr. Bardey notes, "[i]n addition to his intellectual, cognitive, and developmental deficits, Mr. Mills also manifested significant difficulties with socializing and maintaining relationships with peers throughout his life, as his family indicated that he has always been developmentally behind those his own age." *Id.* at 14. Throughout his life he has struggled to function in social situations and has often been on his own. *Id.* He has had difficulty reading other people's emotions or put himself in their position. He also has difficulty understanding social cues. Mr. Mills's ASD still affects his day-to-day life. He has difficulty understanding other people's thoughts and feeling and reading other people's emotions. *Id.* at 12. His fiancé describes this as a "major deficiency," and one that made it difficult for them to communicate effectively. *Id.* The DSM-5 notes that people with autism "may have a preference 'for solitary activities or for interacting with much younger or older people.'" *Id.* His father noted that since childhood 'he has preferred to interact with much younger people, who are more developmentally in-line with him, as opposed to peers

---

[1] Mr. Mills was diagnosed with Asperger's Syndrome when he was 17 years old in 2010. Asperger's Syndrome gained attention when it was added to the DSM-IV in 1994. In 2013, when the DSM-V was released, Asperger's Syndrome was encompassed into a broader diagnosis of ASD, which includes other related developmental disorders.

of his own age, who developmentally, surpass him and intimidate him." *Id.* at 14-15. His history indicates he has struggled in social situations and has made strange attempts to socialize with others. *Id.* at 15. He has found it a struggle to interact with adults and has found it easier to interact with adolescents who have not matured past his level of maturity. *Id.* "Craving social contact, Mr. Mills turned toward children as an opportunity for social engagement, rather than a target of predatory behavior." *Id.* According to his father, Mr. Mills remains developmentally behind to this day and acts more like an 18-year-old. *Id.* at 12. "Mr. Mills' behavior, although disturbing, is likely rooted in these abnormalities that are beyond his control or comprehension. It is with this in mind, along with the complexity of his mental impairments, that one must consider his offense behavior." *Id.* at 15. His actions demonstrate "extremely poor judgment and limited insight into the inappropriate nature of his behavior, as well as an inability to internalize and learn from past experiences." *Id.* at 16.

### B. Mr. Mills's Internet Usage was Impacted by His ASD

There is always a concern when child pornography offenders are participating in online communities and interacting with other individuals who collect these materials. Often, such behavior can "normalize" the viewing of these images and make it easier for a person who views or collects these images to try and justify their actions. Such behavior furthers the demands for such imagery, can cause further victimization to those whose images are on the internet, and creates a market for others to perpetuate the creation of these images.

For Mr. Mills, the existence of such communities was particularly insidious because, as a person with ASD, he struggles to understand what many consider to be "normal" behavior. Mr. Mills grew up with technology and easily fell into online communities looking for sexual relationships. He found it easier to navigate this landscape because the pressure of immediately responding to others and reading their facial expressions was alleviated. The online community allowed him to avoid these complications. After moving to Colorado, he became enmeshed in online communities. He started turning to the internet more and more in times of stress. Although therapy had worked for him in the past, he no longer had insurance. His prior therapist had been based in Florida, and now that he had relocated to Colorado, he no longer could see her. He was unsure where to even begin to get help and even if he could find a therapist, he did not have the insurance to cover the costs of therapy.

Mr. Mills online activities were likely exacerbated by the COVID-19 pandemic despite his pending charges in Colorado. Many were isolated in their homes and turning to online activities in some instances for connection and in many others out of boredom. The pandemic caused an increase in anxiety and other mental health issues for many. For Mr. Mills, he was dealing with similar feelings and additional feelings of anxiety because of his pending charges. He turned to the internet, something familiar and comforting, as a way to alleviate this anxiety. The fact that Mr. Mills was on the sex offender registry at the time this offense was committed is certainly an aggravating factor. However, his actions here are in essence a continuation of the prior conduct that led to the Colorado conviction. This offense occurred approximately 20 days after he had been sentenced for the Colorado conduct and approximately 2 weeks after he was required to register on the sex offender registry. He was required to participate in mental health treatment but did not have the means to begin that therapy. Mr. Mills did not attend any individual or group therapy sessions, review any treatment concepts with a provider, or complete any assessment at the time. He had just begun to sign up for services when he was arrested for the instant offense. In fact, during the pendency of the Colorado case, nearly a year from when authorities executed the warrant to when he was sentenced, he had not received any mental health services of any kind. He was arrested for the Colorado conduct shortly before the pandemic began and had no mental health services to deal with his issues. He was struggling already without even considering how those issues were exacerbated by the pandemic.

### C. Mr. Mills's Childhood

Although Mr. Mills was fortunate to have a loving and supportive family, he still faced many struggles. His ASD made it difficult to navigate relationships with his peers and he was often bullied as a result. He was also in special education services throughout his childhood, which also isolated him from his peers. Most significantly, he faced sexual abuse at an early age. It was something he did not understand, nor did he understand how to report it and get help for the damage done by those acts. It is still something he struggles with and wishes to address in therapy.

### D. Mr. Mills will Not Get Appropriate Treatment Until he is Released In the Community

As Dr. Bardey notes, Mr. Mills is someone who requires "extensive sex offender treatment consisting of psychoeducation, as well as ongoing individual therapy in order to

develop an understanding of the root causes of his behavior and to develop the necessary tools to reduce the likelihood of recidivistic behavior." *Id.* at 16. It is evident that Mr. Mills requires help to deal with these issues in conjunction with sex offender therapy. However, without such therapy to address those issues, nor any sex offender therapy at all, it is unsurprising that he was arrested shortly after his Colorado sentencing for similar conduct. His actions here are almost an extension of the prior Colorado conduct. He had an intervention with law enforcement and that clearly did not curb his behavior, but he also was not provided any tools to address either his sexual interests or his ASD. It is important to note that although he is motivated to get treatment and therapy he will not get adequate treatment for his mental health and sex offender needs while in custody and that little to no progress could be made on those fronts while he is serving his sentence. *See* Letter from Matthew Mills, attached hereto as Exhibit E. His actions demonstrate that he needs a substantial sentence to deter him from future crimes and make evident the serious nature of his actions.

       Clearly, a serious sentence is warranted. A sentence of 10-years would send that message. A demonstration of moderate leniency for someone with Mr. Mills troubling history and untreated mental health issues would strike a balance while also showing that such offenses are treated seriously. It is important to remember that this is only Mr. Mills's second criminal conviction and he has never served any incarceratory sentence before. His time in custody has also been difficult as he is far from his family and has not been able to visit with them in the over three years he has been in custody. His only way of communicating with his family has been over the phone or by video calls, which the technology is sporadic at best. Despite these obstacles, his family remains supportive of him. *See* Exhibits B-D; Letter from William Tuller, attached hereto as Exhibit F; Letter from James (Jay) H. Commuso, attached hereto as Exhibit G; Letter from Brenda Gaffney, attached hereto as Exhibit H. His time in custody has been further complicated and been more severed because of the additional restrictions in place because of the pandemic.

      Based on the enclosed, Mr. Mills respectfully requests Your Honor sentence him to 10-years imprisonment with supervision to follow. Thank you for your time and consideration.

                                            Sincerely,

                                            Elizabeth K. Quinn
                                            Assistant Federal Defender
                                            Counsel for Matthew Mills

cc:      Marcia Cohen, AUSA