

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*50 Main Street – Suite 1100*
*White Plains, New York 10606*

January 4, 2024

The Honorable Nelson S. Román
United States District Judge
Southern District of New York
United States Courthouse
300 Quarropas Street
White Plains, NY 10601

      Re:  <u>United States</u> v. <u>Matthew Mills</u>
           S1 23 Cr. 232 (NSR)

Dear Judge Román:

    Sentencing in the above-referenced case is scheduled for January 10, 2024.  The Government respectfully submits this letter to request that the Court impose a sentence of 216 months' imprisonment to be followed by a lifetime term of supervised release. As discussed below, the requested sentence is necessary to protect the public and appropriate given the seriousness of the defendant's offense conduct.

## Factual Background

**A.**   **Offense Conduct**

    On or about August 3, 2020, the parent ("Parent-1") of an 11-year-old child ("Victim-1") reported to the FBI inappropriate activity between Victim-1 and a male individual ("Male-1").  (PSR ¶ 9).

    Victim-1, who was in 6th grade at the time and living in Orange County, New York, reported that he had had online contact with a male.  After meeting online playing a video game, the male – who was later identified as the defendant, Matthew Mills – asked for his cell phone number and they switched to text communications. During these communications, Victim-1 and the defendant exchanged sexually explicit pictures and the defendant told Victim-1 exactly what kind of pictures he wanted. Mills told Victim-1 to call him "Daddy" and Mills called Victim-1 "baby."  (PSR ¶¶ 10, 11).

    A review of Victim-1's phone revealed numerous texts exchanged  between Victim-1 and Mills between July 30, 2020 at approximately 11:43 p.m. and August 1, 2020 at approximately 12:50 a.m.  During these communications, the defendant said that he was 17 almost 18 and Victim-1 told the defendant that he was 11 years old. The defendant told Victim-1 that the age gap didn't bother him.  (PSR ¶ 12).

On July 30, 2020, at approximately 11:43 p.m., Victim-1 asked "How old are you" and Mills replied, "17 almost 18 sorry." Victim-1 said, "I'm 11 so…" At approximately 11:47 p.m., Mills said, "It doesn't bother me the age." Victim-1 asked "So what are you saying" and, at approximately 11:48 p.m., Mills replied, "I saying I don't care age gab." (PSR ¶ 12).

On July 30, 2020, at approximately 11:52 p.m., Mills requested a picture from Victim-1. Victim-1 asked, "My face?" Mills said, "Yea." Victim-1 said, "One sec," and then transmitted a photo of Victim-1's face to Mills. Victim-1 said, "I'm pretty ugly." Mills replied, at approximately 11:55 p.m., "No you are not your cute." At approximately 11:57 p.m., Mills transmitted a photo of a male with an erect penis to Victim-1. Mills texted, "Can daddy see urs." At approximately 12:00 a.m. Victim-1 texted a photo revealing his penis and scrotum to Mills. Mills replied, "Nice yummy." (PSR ¶ 12, 13).

On July 31, 2020, at approximately 12:18 a.m., Mills asked Victim-1, "Are u hard." After Victim-1 replied, "Yeah," Mills texted him, "Show." A moment later, Victim-1 texted a photo of his erect penis to Mills. Mills replied, "Still looks great I so suck you." At approximately 12:21 a.m., Mills transmitted a photo displaying a naked male to Victim-1. Mills asked Victim-1, "Can u take pic like mine." Victim-1 replied, "Not right now my dad just got home." Mills replied, "Oh ok maybe when he asleep. (PSR ¶ 14).

Later that morning, at approximately 9:33 a.m., Mills transmitted a video to Victim-1. The video depicted a male's hand on a penis, sliding up and down. At approximately 9:35 a.m., Mills asked Victim-1, "U able to finger urself babe." Victim-1 replied, "Yes." Mills said, "Can daddy see" and "Babe." Thereafter, Victim-1 transmitted a photo of himself with an erect penis. Mills replied, "I so want to suck you." Later that day, at approximately 4:51 p.m., Victim-1 transmitted a photo of an erect penis with a hand visible. Mills replied, "Take shorts off" and "Yummy Cock." At approximately 4:54 p.m., Victim-1 sent Mills a photo of his exposed penis with red shorts laying around his ankles on the floor. (PSR ¶ 15).

On July 31, 2020 at approximately 8:28 p.m., Mills sent a video to Victim-1. The video depicted an anus being penetrated with a toothbrush in a bathtub. Mills texted Victim-1, "I want to see u do that babe." Thereafter, Victim-1 transmitted a phot of Victim-1's anus being penetrated by a toothbrush. (PSR ¶ 16).

At the time the defendant engaged in these text communications with the 11-year-old Victim-1, Mills was living in Colorado and was a registered sex offender on probation. In April 2020, the defendant pled guilty to Sexual Exploitation of a Child, a Class 4 Felony, in the state of Colorado, and as a result of this conviction, was sentenced to eight years' probation and was required to register as a sex offender in Colorado. (PSR ¶ 18).

## B. The Federal Charges and the Guilty Plea

On October 9, 2020, Mills was charged with (1) sexual exploitation of a child, in violation of Title 18, United States Code, Section 2251(a), a charge carrying a mandatory minimum of 25 years' imprisonment because of Mills' prior sex offense conviction and (2) a violation of Title 18, United States Code, Section 2260A (committing an offense against a minor while a

registered sex offender), a charge carrying a mandatory sentence of ten years to be imposed consecutively to the 2251(a) sentence. Following his submission to the United States Attorney's Office of a request for mitigation, the Government agreed to permit Mills to plead to a single count of enticement in violation of Title 18, United States Code, Section 2422(b).

Superseding Information S1 23 Cr. 232 (NSR), filed on September 29, 2023, charged that, from July 30, 2020 through July 31, 2020, Mills induced 11-year-old Victim-1 to engage in sexually explicit conduct, video and photograph the conduct, and transmit sexually-explicit photographs and videos of Victim-1 to Mills, in violation of Title 18 U.S.C. § 2422(b).

On September 29, 2023, Mills entered a guilty plea to the Superseding Information pursuant to a plea agreement ("Plea Agreement"). Pursuant to the Plea Agreement, the parties agreed that, pursuant to U.S.S.G. § 2G1.3, the base offense level was 28 and that, pursuant to U.S.S.G.§ 2G1.3(b)(2), two levels were added because the offense involved the knowing misrepresentation of a participant's identity to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in prohibited sexual conduct and because the defendant unduly influenced a minor to engage in prohibited sexual conduct. The Plea Agreement provided that two levels were added because the offense involved the use of a computer (§ 2G1.3(b)(3)), that two levels were added because the offense involved the commission of a sex act or sexual contact (§ 2G1.3(b)(4)), and that eight levels were added because the offense involved a minor who had not attained the age of 12 years (§ 2G1.3(b)(5)). The Plea Agreement provided that, based on the above, the resulting offense level would be 42. However, U.S.S.G. § 2G1.3(c)(1) instructs that, if the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, then § 2G2.1 applies, if the resulting offense level is greater than that determined above.

The Plea Agreement provided that, pursuant to § 2G2.1(a), the base offense was 32. Four levels were added pursuant to § 2G2.1(b)(1)(A) because the offense involved a minor who had not attained the age of twelve years. Two levels were added pursuant to § 2G2.1(b)(2)(A) because the offense involved the commission of a sexual act or sexual contact. Accordingly, pursuant to § 2G2.1, the offense level was 38, which was not greater than 42.

The Plea Agreement provided for a 3-level deduction for acceptance of responsibility. The Plea Agreement also recognized that § 4B1.5(a) applied because the defendant's instant offense of conviction is a covered sex crime and the defendant committed the instant offense of conviction subsequent to sustaining at least one sex offense conviction. Pursuant to 4B1.5(a)(1), the offense level shall be the greater of the offense level determined under Chapters Two and Three (here, 39); or the offense level from the table in 4B1.5(a)(1)(B) decreased by the number of levels corresponding to any applicable adjustment from 3E1.1 (here, 34). The Plea Agreement recognized that, in accordance with the above, the applicable adjusted offense level was 39 because 39 was greater than 34.

With respect to the defendant's criminal history category, the Plea Agreement recognized that, pursuant to U.S.S.G. § 4B1.5(a)(2), the defendant's criminal history category was V.

The Plea Agreement provided that, based on a Criminal History Category of V and an offense level of 39, the defendant's sentencing range was 360 months to life imprisonment.

## C. The Presentence Report

The PSR agrees with the Plea Agreement's calculation of the Guidelines, finding an offense level of 39 and a Criminal History Category of V. The PSR discusses the November 1, 2022 forensic psychiatric evaluation provided by defense counsel to the Probation Office. Among other things, the evaluation noted the existence of significant cognitive distortions and diagnostic impression of Autism Spectrum Disorder ("ASD"). As is set forth in the PSR, the evaluator concluded that Mills' ASD "has led to poor socialization, an inability to appropriately read people and gauge emotional responses, and poor impulse control." (PSR ¶ 73.) The evaluator recommended that the defendant participate in "extensive sex offender treatment consisting of psychoeducation, as well as ongoing individual therapy in order to develop an understanding of the root cause of his behavior and to develop the necessary tools to reduce the likelihood of recidivistic behavior." (PSR ¶ 74).

The PSR recommends that the Court impose a sentence of 216 months' imprisonment. The Probation Office underscores Mills prior convictions for voyeurism, aggravated stalking and sexual exploitation of a child and the fact that Mills "was sentenced to eight years intensive probation for the sexual exploitation of a child less than a month before he committed the instant offense." PSR at 30. In explaining the basis for the recommendation of 216 months, the Probation Office states, "For the defendant to be standing before the Court today for the coercion and enticement of a minor, while being a convicted sex offender for a conviction including hands-on conduct is extremely concerning. While the Probation Office acknowledges the defendant's intellectual deficiencies, Mills still knowingly lied about his age to deceive, manipulate, and gain the trust of his victim." PSR at 30. The Probation Office continues, "It is worrisome that he received a probationary sentence for this conduct and engaged in this conduct within a month of sentencing while knowing he was under supervision. The defendant's conduct represents a disregard for the law, as well as the safety and wellbeing of the minors he has victimized for his own sexual gratification." (PSR at 30). While recognizing "the defendant's difficult personal history," the Probation Office explains that it does not "not believe it negates the immeasurable physical and psychological harm he has caused." PSR at 30.

## ARGUMENT

## A 216-Month Term of Imprisonment Is Appropriate

The applicable Guidelines' sentence here is 360 months to life imprisonment. The Government, like the Probation Office, does not believe that a Guidelines' sentence is necessary here. The Government agrees with the Probation Office that a 216-month sentence is the lowest term of imprisonment that would be sufficient, but not greater than necessary, to comply with the

3553(a) factors. The Government also joins the Probation Office's request for a lifetime term of supervised release. The requested sentence is necessary to protect the public and is appropriate given the seriousness of the defendant's offense conduct.

Although the Sentencing Guidelines no longer play a mandatory role at sentencing, they continue to play a critical role in trying to achieve the "basic aim" that Congress tried to meet in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." *United States v. Booker*, 543 U.S. 220, 252 (2005). In furtherance of that goal, judges are required to "consider the Guidelines `sentencing range established for... the applicable category of offense committed by the applicable category of defendant,' § 3553(a)(4), the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims, §§ 3553(a)(1), (3), (5)-(7) (main ed. and Supp. 2004)." 543 U.S. at 259-60.

In sentencing defendants, district courts must consider not only the Guidelines but also the other factors set forth in Section 3553(a). Section 3553(a) provides that the sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth seven specific considerations that district courts must take into account at sentencing: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established [in the Sentencing Guidelines]; (5) any pertinent policy statement [issued by the Sentencing Commission]; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

**A.   The Requested Sentence Will Reflect the Seriousness of the Offense Conduct and Provide Just Punishment**

Here, a sentence of 216 months' imprisonment cannot be considered "greater than necessary" to achieve the goals of sentencing. Despite the fact that he was a registered sex offender and on probation in the state of Colorado, the defendant met 11-year-old Victim-1 online and persuaded him to take and send sexually explicit images to Mills. Mills knew the boy was 11. Mills lied to the boy about his own age, telling Victim-1 he was 17, and Mills told him that the age gap didn't bother him.

The Government recognizes that Mills' sentencing submission describes various sympathetic aspects of his background. It bears pointing out that the Government was provided with the November 1, 2022 forensic psychiatric evaluation during the Government's plea discussions with defense counsel. The Government, made aware of the circumstances discussed

in the evaluation, already gave Mills an enormous benefit by permitting him to plead guilty to a single count of enticement, a charge carrying a mandatory minimum of ten years' imprisonment. As the Court is aware, the Complaint charged Mills with sexual exploitation of a child in violation of Title 18, United States Code, Section 2251(a) and a violation of 2260A (being a registered sex offender who commits an offense against a minor).   These charges would have resulted in a 35-year mandatory minimum. As a result of Mills' prior offense, the 2251(a) charge carried a mandatory minimum of 25 years' imprisonment and the 2260A charge carried a mandatory term of ten years to be imposed consecutively to the 2251(a) sentence.  In considering the sentence to impose here and the Government's requested sentence of 216 months' imprisonment, this Court should consider the fact that Mills has already received a significant break.  Under the circumstances presented here, the requested sentence cannot be considered greater than necessary.

B. **A 216-Month Sentence Will Protect The Public**

Mills committed the instant criminal offense involving an 11-year-old despite the fact that, less than one month before, he had been sentenced to eight years' probation for the sexual exploitation of a child.  Despite being on probation, despite being a registered sex offender, Mills still manipulated an 11-year-old child in order to convince that child to send him sexually explicit images.  Mill's conduct demonstrates his disregard for the law and speaks volumes concerning his inability to control his sexual desire for children. Moreover, while the Government appreciates defense counsel's emphasis on the need for mental health treatment, no one can predict, with any degree of certainty, that Mills will adhere to a treatment program that will address his criminal sexual behavior and that, after such treatment, he will not pose a danger.

C. **The Requested Sentence Will Provide Adequate Deterrence and Promote Respect for the Rule of Law**

In addition to protecting the public and providing a just punishment, the requested sentence of 216-months' imprisonment to be followed by a lifetime term of supervision would send an important message of deterrence to Mills, underscoring that this serious offense conduct will be met with serious consequences.  Further, the requested sentence would also send an important message of deterrence to all others who prey, as Mills did, on the most defenseless and vulnerable members of our community – our children.

**Conclusion**

        For all the foregoing reasons, the Government requests that this Court impose a sentence of 216-months' imprisonment to be followed by a lifetime term of supervised release.

Very truly yours,

DAMIAN WILLIAMS
United States Attorney

by: _____
Marcia S. Cohen
Assistant United States Attorney
(914) 993-1902

cc: Elizabeth Quinn, Esq.
    Ashley Geiser, United States Probation Officer